IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

MICHAEL RAY,

                            Plaintiff,

v.                                              CIVIL ACTION NO.   5:15-cv-03014

MECHEL BLUESTONE, INC.,

                            Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Motion for Class Certification* (Document 15), the *Brief in Support of Motion for Class Certification* (Document 16), the *Defendant's Brief in Opposition to Plaintiff's Motion for Class Certification* (Document 17), the Plaintiff's *Reply to Opposition to Motion for Class Certification* (Document 18), the Plaintiff's *Supplemental Brief* (Document 21), and all accompanying exhibits.   For the reasons stated herein, the Court finds that the Plaintiff's motion should be denied.

## STATEMENT OF FACTS

For purpose of this motion, the Court adopts the following facts from the Plaintiff's pleadings and the parties' briefings on class certification.   The Defendant, Mechel Bluestone Inc. ("Bluestone"), a Delaware corporation, owns several mining facilities that produced coal in Wyoming County and McDowell County, West Virginia.   (Amend. Compl. at ¶1-6.)[1]   Bluestone

---

[1]   In its *Answer* (Document 13) to the Plaintiff's *Amended Complaint*, the Defendant admitted that the Plaintiff worked at Double-Bonus Mine No. 65. (Answer, at ¶1.)   The Defendants also admitted that the relevant mines were located in Wyoming County and McDowell County, West Virginia. (Id. at ¶3-7.)   The Defendant indicated it was "without sufficient knowledge upon which to form a belief" as to the truth or falsity of Paragraphs 11, 13, 14, and 16. (*Id*. at ¶11, 13-14, 16)

owned at least two subsidiary corporations which operated coal mines in this region: Double-Bonus Coal Company ("Double-Bonus") and Dynamic Energy, Inc. ("Dynamic"), also known as Justice Energy Company, Inc. (*Id*. at ¶7(a)-(b))

As of October, 2012, the Plaintiff was employed at the Double-Bonus Mine No. 65.   (*Id*. at ¶10-11.)   On or about November 25, 2013, David Bishop, then-manager of Double-Bonus Mine No. 65, "verbally communicated" a layoff to the miners at Double-Bonus Mine No. 65.   (*Id*. at ¶14.)   Between approximately November 20, 2013 and December 19, 2013, at least seventy-six miners, including the Plaintiff, were laid off at the Double-Bonus Mine No. 65.   (*Id.* at ¶15.)[2] Simultaneously, approximately one hundred and twenty-eight miners were laid off at the Coal Mountain Surface Mine No. 1 and the Red Fox Surface Mine, operated by Dynamic.[3]   (*Id*.) Neither the Plaintiff nor the United Mine Workers received written notice of this layoff.   (*Id*. at ¶16.)   According to the Plaintiff, laid-off employees from Double-Bonus and Dynamic did not receive mandatory holiday pay, and medical and dental coverage for these employees was improperly terminated.[4]   (*Id*. at ¶17-19.)   The Plaintiff also claims that Bluestone possessed *de jure* and *de facto* control over the Double-Bonus Mine No. 65, ostensibly controlled by Double-Bonus, and the Coal Mountain Surface Mine No. 1 and the Red Surface Fox Mine, ostensibly controlled by Dynamic.   (Pl.s' Brief in Supp. of Mot. for Class Cert., at 2.)

---

[2]   The Defendant also admitted this allegation, "except to the extent" the allegations were statements of legal conclusions.   (*Id*. at ¶12.)

[3]   The Plaintiff, on November 25, 2015, filed a Supplemental Brief (Document 21), wherein the Plaintiff provided the Court with a list of fifty-eight miners laid off at the Double-Bonus Mine No. 65, and forty-six miners laid off at the Dynamic facilities during the relevant time period.   (Pl.s' Supp. Brief, at 1-2.)

[4]   The Defendant denied the allegation in Paragraph 17, but indicated it was "without sufficient information or knowledge" upon which to base a belief as to the truth or falsity of the allegations contained within Paragraphs 18 and 19 of the Plaintiff's *Complaint*.

According to the Plaintiff, Michel Bluestone exercised direct supervisory authority over Double-Bonus and Dynamic, and also provided "administrative assistance" such as "management of employee insurance accounts, workers' compensation, and hiring decisions," including the 2013 layoff.  (Pl.s' Reply, at 4.)   A Michel Bluestone staff member, Donna Campbell, also allegedly signed the layoff notices at issue in this case, and oversaw communications with the employees who executed the layoff.   (*Id*. at 4.)   Bluestone shared common directors with Double-Bonus and Dynamic at the time of the layoff.   (Annual Reports for Dynamic Energy, Double-Bonus and Bluestone, att'd as Ex. 9 to Pl.'s Reply, at 1-15.)

### PROCEDURAL HISTORY

The Plaintiff initiated the present action with the filing of a *Complaint* (Document 1-1) in the Circuit Court of Wyoming County, West Virginia.   The Plaintiff alleged that the Defendant, doing business as Double-Bonus Coal Company, violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §2101 *et seq*., by failing to provide a sixty-day notice to employees of a pending layoff.   (Compl., at 1.)   On March 12, 2015, the Defendant removed this case to the United States District Court for the Southern District of West Virginia.   (Notice of Removal, at 1) (Document 1).   The Plaintiff filed his *Amended Complaint* on June 23, 2015 (Document 10).   The Defendant filed its *Answer* on July 14, 2015 (Document 13).   On September 23, 2015, the Plaintiff moved for class certification.   The Defendant filed its brief in opposition on October 7, 2015, and the Plaintiff filed his reply on October 19, 2015.   In his reply, the Plaintiff amended his proposed class definition to include "[a]ll persons who were employed full-time through the Double-Bonus Coal Company and Dynamic Energy and who were subject to a reduction in force during the 30-day period from November 20, 2013 to December 20, 2013."

(Pl.s' Reply, at 2.)   On November 4, 2015, the Plaintiff moved to supplement briefing on the question of class certification.   The Court granted the motion, and the Plaintiff filed his supplemental brief.   The Plaintiff's motion for class certification is, therefore, ripe for review.

## APPLICABLE LAW

*(A)   Federal Rule of Civil Procedure 23*

The certification of a class action is governed by Federal Rule of Civil Procedure 23 ("Rule 23").   Rule 23(a) states that:

> "one or more members of a class may sue" as "representative parties" if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

More succinctly, Rule 23(a) requires a potential class plaintiff to show numerosity, common questions of law or fact, typicality, and adequacy of representation.   *Id.*   Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and limits the class to those with claims "fairly encompassed by the named plaintiff[]."   *Dukes v. Walmart Stores*, 131 S.Ct. 2541, 2550 (2011), quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).   Rule 23(a) is not a "mere pleading standard."   Rather, the rule requires that "[a] party seeking class certification must affirmatively demonstrate his compliance," by being "prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."   *Id.* at 2551.

Rule 23(a) is not the only requirement that a potential class plaintiff must satisfy. Plaintiffs must also satisfy Rule 23(b).   A plaintiff seeking class certification must satisfy all of the requirements of Rule 23(a), as well as one of the subsections of Rule 23(b).   *Brown v. Nucor*

4

*Corp*., 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 318 (4th Cir. 2006).   In this case, the Plaintiff seeks class certification under Rule 23(b)(2), which authorizes class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   Fed.R.Civ.P. 23(b)(2).   In the alternative, the Plaintiff seeks certification under 23(b)(3), which requires that the Court determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed.R.Civ.P. 23(b)(3).   The four factors for courts to consider under Rule 23(b)(3) are:

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties of managing a class action."   *Id*.

A district court has broad discretion to decide whether to certify a class action under Rule 23, but the Plaintiff bears the burden of proof in establishing that all requirements of Rule 23 are met.   *Leinhart v. Dryvit Systems, Inc*., 255 F.3d 138, 146 (4th Cir. 2001), citing *In re American Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996); *Int'l Woodworkers of Am. V. Chesapeake Bay Plywood Corp*., 659 F.2d 1259, 1267 (4th Cir. 1981).   At the class certification phase, the district court must "take a close look" at the "facts relevant to the certification question, and, if necessary, make specific findings" relevant to certification.   *Thorn v. Jefferson-Pilot Life Insurance Co*., 445 F.3d 311, 319 (4th Cir. 2006), citing *Gariety v. Grant Thornton*, LLP, 368 F.3d 356, 365 (4th Cir. 2004).   These findings are necessary, even if "the issues tend to overlap into the merits of the underlying case."   *Id*., citing *Falcon*, 457 U.S. at 160 ("[S]ometimes it may be necessary for the

5

[district] court to probe beyond the pleadings before coming to rest on the certification question.");

*Gariety*, 368 F.3d at 366.

    2.   *The WARN Act, 29 U.S.C. §2102 et seq*

    In this case, the alleged "common question of law or fact" raised by the Plaintiff arises under the WARN Act, 29 U.S.C. §2102 *et seq*. The WARN Act requires employers to provide sixty (60) days written notice of a mass layoff to affected employees or their collective bargaining representative. 29 U.S.C. §2102(a), (a)(1). Under 29 U.S.C. §2101(a)(3), a "mass layoff" is a reduction in force which "(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for"… "(I) at least 33 percent of the employees …" and "(II) at least 50 employees …" 29 U.S.C. §2101(a)(3). Part-time employees are not considered in determining whether a mass layoff has occurred. *Id.*

    The WARN Act defines an employer as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …" 29 U.S.C. §2101(A)(1)(a)-(b). Department of Labor regulations stipulate that "[u]nder existing legal rules, independent contractors and subsidiaries which are wholly or partially owned" by a corporate parent "are treated as separate employers or as a part of the parent or contracting company" based on "the degree of the independence from the parent." 20 C.F.R. §639.3(a)(2). "Some of the factors" for courts to use in determining whether a subsidiary and a parent constitute a common employer are "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id.*

Whether the Double-Bonus and Dynamic mines constitute a "single site of employment" is a mixed question of law and fact.  *Davis v. Signal Int'l Texas GP*, 728 F.2d 482, 485 (5th Cir. 2013.)  While the WARN Act does not define "single site of employment," Department of Labor regulations provide interpretive guidance.  A "single site of employment" can refer to a "single location" or a group of contiguous locations."  20 C.F.R. §639.3(i)(1).  The general rule is that "separate facilities are separate sites."  *Davis*, 728 F.2d at 485, citing 54 Fed.Reg. 16042, 16050 (Apr. 21, 1989). Of particular relevance to this case, the regulations indicate that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" may constitute a single site of employment, "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment."  20 C.F.R. §639.3(i)(3).  By contrast, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site."  20 C.F.R. §639.3(i)(4).  Similarly, "[c]ontiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate sites of employment." 20 C.F.R. §639.3(i)(5).  The Department of Labor regulations also note that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the [preceding paragraphs] do not reasonably apply."  20 C.F.R. §639.3(i)(8).

## DISCUSSION

### A.  *Constitutional Standing*

A threshold question in a motion for class certification is whether the Plaintiff satisfies the Constitutional requirement of standing.  Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const. art. III, §2; *see also Rhodes v. E.I.*

*Du Pont de Nemours and Co.*, 636 F.3d 88, 99 (4th Cir. 2011).   A case must be brought by a party with a "personal stake" in the litigation."   *Id.*, citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008).   In a class action, the Plaintiff must not only have a "personal stake" in the litigation, but also must have "a distinct procedural right" to represent "the interests of similarly situated individuals."   *Id.*, citing *Geraghty*, 445 U.S. at 402.   In this case, the parties do not contest the question of whether the Plaintiff has Constitutional standing to bring the present case.   Thus, the Court finds that the Plaintiff's cause of action satisfies, at a minimum, the requirements of Article III.

### B.   *Standing under the WARN Act*

#### 1.   *Single Employer*

The Court must determine, as the Defendant points out in his brief in opposition, whether the Plaintiff has a valid statutory cause of action.   In this case, that requires the Court to determine if the Plaintiff may bring a class claim under the WARN Act on behalf of all miners laid off at both Double-Bonus and Dynamic.   The resolution of this question is necessary prior to the application of Rule 23(a) and (b) to the Plaintiff's proposed class.   The Department of Labor regulations set forth a five-part inquiry for determining whether a parent corporation and its subsidiaries constitute an "employer" under the WARN Act.   The Defendant does not contest that the first two factors under this test – common ownership and common directors and/or officers – are satisfied, as Bluestone not only owns Double-Bonus and Dynamic, but also share at least two directors and officers with each subsidiary.   Moreover, the Court finds that the Plaintiff has set forth sufficient evidence in moving for class certification to show that Bluestone exercised *de facto*

8

control over Double-Bonus and Dynamic.   As the Plaintiff notes, the test for de facto control under the WARN Act is "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for this litigation."   *Pearson v. Component Tech. Corp*., 247 F.3d 471, 495 (3rd Cir. 2001).   Here, the Plaintiff has proffered evidence that the unemployment insurance notices for Double-Bonus were signed by Donna Campbell, who, according to the Plaintiff, served in Human Resources for Bluestone at the relevant time. (Donna Campbell LinkedIn Profile, att'd as Ex. 3 to Pl.'s Reply.)   Campbell's participation in the layoff notices, as an employee of Bluestone, suggests that Bluestone had de facto control over the "illegal employment practice" giving rise to this litigation.   The Plaintiff has also proffered evidence that mining operations at Dynamic were directed by Bluestone's parent – Mechel OAO. Specifically, the Plaintiffs proffered a press release by Mechel OAO, indicating that "Mechel has decided to resume open-pit mining at some of Mechel Bluestone's facilities – Justice Energy and Dynamic Energy mining complexes."   (Mechel OAO Press Release of January 24, 2013, att'd as Ex. 6 to Pl.s' Reply, at 1.)   The Court finds it unlikely that the corporate parent, Mechel OAO, directed resumption of mining operations at Bluestone mines in January of 2013, only for the individual mining companies to engage in wide-scale termination of mining employees less than a year later with no involvement from either Mechel OAO or Bluestone as its direct mining subsidiary.[5]

---

[5]   The Court also notes that the Plaintiff has attached filings made by Mechel OAO to the SEC, wherein Bluestone's parent corporation disclosed the "temporary halting of mining at Michel Bluestone."   (Mechel OAO Form 6-K, att'd as Ex. 5 to Pl.s' Reply, at 1.)   This evidence supports the inference of de facto control, but the Plaintiffs have failed to show that the 6-K directly relates to the events giving rise to this litigation, as its 6-K was filed more than four months after the layoff at issue.

The Plaintiff has also proffered evidence of "unity of personnel policies" at Double-Bonus and Dynamic, and that these policies "emanat[ed] from a common source" namely, Bluestone. Specifically, the Plaintiff has provided evidence that when a miner at Double-Bonus sought workers compensation, the claim was defended by Bluestone, rather than Double-Bonus. (Affidavit of Carl Nuckols, att'd as Ex. 2 to Pl.s' Reply, at 1-2; Order Extending Time Frame to Provide Evidence for Worker's Compensation Claim, att'd as Ex. 8 to Pl.s' Reply, at 1.)   When the same miner received COBRA continuation coverage after termination, the coverage was provided through Bluestone's health plan, rather than a plan provided by Double-Bonus.   (Cobra Continuation Coverage Election Notice at 3, att'd as Ex. 8 to Pl.s' Reply.)   The Court finds this evidence sufficient for purpose of class certification.

The final factor set forth in the Department of Labor regulation is the "dependence of operations."   The Plaintiff argues that "Bluestone's central dependency on the coal operations of Double-Bonus and [Dynamic] is evident because those facilities produced the coal that [Bluestone] sold in order to generate 18 to 27 percent" of Mechel OAO's annual metallurgical coal production. (Pl.s' Reply, at 7.)   In support, the Plaintiff cites Mechel OAO's SEC Form 20-F annual reports from 2012 and 2013, which indicate that Double-Bonus and Dynamic were significant contributors to Bluestone's annual coal production, and thus, to the coal produced annually by Bluestone's parent, Mechel OAO.   (2012 Mechel OAO SEC Form 20-F annual report at 72, att'd as Ex. 13 to Pl.s' Reply; 2013 Mechel OAO SEC Form 20-F annual report at 72, att'd as Ex. 14 to Pl.'s Reply.) The Court views the evidence as to this factor as a close call.   Clearly, daily operations at Double-Bonus mines were at least in some degree independent from those at Dynamic.   On the other hand, production from both mines was clearly significant to Bluestone's annual coal production, and to

10

the resulting revenues.   The dependence of operations factor is neutral.   Given the analysis and findings relative to the preceding four factors, the Court finds, for the limited purpose of class certification, that Bluestone was a single employer.

### 2. *Single Site of Employment*

The Court's inquiry, however, does not end with that determination.   The Court must also determine whether the three mines named by the Plaintiff constitute a "single site of employment" for purposes of the WARN Act.   Applying the Department of Labor regulations, the Court must determine if the three mines listed by the Plaintiff – Double-Bonus Mine No. 65, Red Fox Mine, and the Coal Mountain Surface Mine No. 1 are (1) in reasonable geographic proximity, (2) share the same operational purpose, and (3) share the same staff and equipment.   20 C.F.R. §639.3(i)(3).

As to geographic proximity, the Plaintiff notes that all three mines are located "in the western part of Wyoming County and nearby in McDowell County, West Virginia."   (Pls.' Reply, at 8.)   Further, Bluestone's parent corporation, Mechel OAO, filed a 2013 annual report with the SEC, wherein Mechel stated "Our Bluestone mines are located in McDowell and Wyoming counties in southern West Virginia, near the city of Beckley ... The mines are organized around three mining complexes … all of which are located in close proximity to each other."   (2013 Form 20-F, at 81, att'd as Ex. 12 to Pls' Reply.)

In response, the Defendant argues for a "presumption" that geographically-separate mining operations are "to be considered separate sites of employment under the WARN Act."   (Def. Brief in Opp. to Mot. for Class Cert., at 9.)   The Defendant relies upon precedent to support this argument, in particular, *Int.' Union, United Mine Workers v. Jim Walter Resources, Inc.*, 6 F.3d 722 (11th Cir. 1993) ("*Jim Walter Resources*") (holding that mines were not "same site of

11

employment" where geographically separate, and where each mine had separate employees, management team, parking lot, gate, office building, permits, mine numbers and tonnage requirements), *Likes v. DHL Express*, 2014 U.S. Dist. LEXIS 78685 (N.D. Al. June 10, 2014) and *McClain v. Laurel Street Art Club, Inc*., 925 F.Supp. 496, 499 (E.D. Ky. 1995).   As to the question of geographic separation, the Defendants rely in particular on *McClain*, where the Court looked to the legislative history of the WARN Act to find that, in cases where manufacturing sites were geographically separate, "they are presumed to be separate sites of employment."   *McClain*, 925 F.Supp. at 499, citing *United Food and Commercial Workers Union v. Giant Markets, Inc*., 878 F. Supp. 700 (M.D. Pa. 1995).

While "site of employment" is not precisely defined, the regulations set forth various conditions under which geographically separate sites can be classified as a "single site of employment," and the plain meaning of these conditions provides guidance to the Court in resolving the question in this case.   One of these conditions is the degree of geographical separation.   Here, the parties do not dispute that the three mines are located within adjacent counties in Southern West Virginia.   However, the regulations specifically state that "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site."   20 C.F.R. §639.3(i)(4).   Clearly, the mines in this case are in adjacent counties and not within the same geographic area.

The broad operational purpose of the three mines named by the Plaintiff is undisputed. All produce metallurgical coal for sale by Bluestone and Bluestone's parent corporation, Mechel OAO.   The Plaintiff claims that "Bluestone's mines in McDowell and Wyoming Counties shared the operational purpose of fulfilling interchangeable coal orders received by [Bluestone]," and the

12

Defendants do not dispute that assertion. (Pl.s' Reply, at 9.)   By contrast, the Defendant emphasizes *Jim Walter Resources*, where the Court found that "operational purpose" must "mean more than 'produce the same product.'"   *Jim Walter Resources*, 6 F.3d at 726.   The Court finds the argument inapplicable.   Even if the Court adopted the Eleventh Circuit's reasoning, as the Plaintiff notes, "Bluestone in fact coordinated production between these mines for the purpose of fulfilling the same specific coal sales contracts."   Thus, not only did the mines produce the same product, but the mines produced the same product for the same purpose of assisting their parent corporation, Bluestone, in fulfilling its corporate contracts.   The Court, therefore, finds that the mines at issue shared the same operational purpose.

The final question for the Court to determine is whether the relevant mines shared the same staff and equipment.   In support of the present motion, the Plaintiff presents evidence that certain employees worked across Bluestone mines, at facilities operated by Double-Bonus and by Dynamic. (Pl.s' Reply, at 9.)   In particular, the affidavit of Andrew Nuckolls states that the Bluestone electrical superintendent, Tom Lusk, would "regularly rotate between those mines, working at each mine once or twice a week."   (Affidavit of Andrew Nuckolls, at ¶5, att'd as Ex. 5 to Pl.s' Reply.)   Nuckolls also indicated that Bluestone would assign common survey personnel to each mine.   (*Id*. at ¶6.)   The Plaintiff also proffered evidence that Mechel OAO filed integrated safety disclosures for all Bluestone mines.   (2013 Mine Safety Disclosure, at 1, att'd as Ex. 16 to Pl.s' Reply.)   The Defendants claim that this evidence is insufficient, and that the Court should follow *Jim Walter Resources*, where the Eleventh Circuit found that mines with separate office buildings, management teams, employees, permits and mine numbers" were not a "single site of

13

employment."   (Def. Resp. in Opp. to Mot. for Class Cert., at 6, citing *Jim Walter Resources*, 6

F.3d at 726.)

The Plaintiff's evidence, at best, indicates that only a few employees were shared across

the relevant mines in this case, and these employees were either managerial (e.g., a senior

electrician) or employees with highly specialized skills (e.g., mine surveyors.)   Regarding the

mine surveyors, the Court finds that the use of survey teams across mines is not indicative of a

"single site of employment."   Rather, the Court finds it reasonable for a mining company to

maximize the utility of this resource by sharing the same highly specialized employees across

different sites.   Such a practice does not require a finding that the various mines constitute a

"single site of employment" for purposes of the WARN Act, as it does not constitute "…rotat[ing]

the same employees from one building to another." 20 C.F.R. §693.3(i)(3).   Nor has the Plaintiff

made any proffer that equipment was shared across the mine sites.   This Court agrees with the

court in *Jim Walter Resources* in finding that occasional sharing of employees across multiple sites

does not mean that the sites constitute a "single site of employment."   *Jim Walter Resources*, 6

F.3d at 726.   In that case, the court found that merely sharing "corporate employees who perform

corporate functions," such as the legal department, and sharing supervisors "in emergencies" did

not create a "single site of employment" under the WARN Act.   *Id.* at 726 n.1.   Similarly, in

*Likes*, the Eleventh Circuit held that where two contractors operated out of the same facility, but

had separate "administrative staff and payroll," and made "personnel decisions individually," and

there was no evidence that "employees moved between" the contractors, the facility was not a

single site of employment.   *Likes*, 787 F.3d at 1099.   Thus, the situation here is akin to the

example set forth by 20 C.F.R. §639.3(i)(3), "assembly plants which are located on opposite sides

14

of town and which are managed by a single employer," which the regulation notes are "separate sites if they employ different workers."   20 C.F.R. §639.3(i)(3).

Because Double-Bonus Mine No. 65, operated by Double-Bonus, and the Coal Mountain Surface Mine and No. 1 and Red Fox Surface Mine, operated by Dynamic, were not within the same geographic vicinity, and did not share the same staff and equipment, the mines do not constitute a "single site of employment."   Therefore, given the Plaintiff's current definition of the proposed class and given the Court's findings relative to the WARN Act, the Plaintiff is unable to satisfy the statutory requirements for bringing a class cause of action under the Act.   Further, given these findings, the Court finds it unnecessary to address the specific requirements of Rule 23.

## CONCLUSION

Wherefore, after careful review and thorough consideration, the Court **ORDERS** that the *Motion for Class Certification* (Document 15) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.


ENTER:   March 2, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

15